UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
CHAVA SCHECHTER
on behalf of herself and
all other similarly situated consumers

                         Plaintiff,

       -against-

SOUTHWEST CREDIT SYSTEMS, L.P.

                         Defendant.

---------------------------------------------------------

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FCRA AND FDCPA

### *Introduction*

1. Plaintiff Chava Schechter seeks redress for the illegal practices of Southwest Credit Systems, L.P., ("Southwest Credit"), concerning the collection of debts, in violation of the Fair Credit Reporting Act, 15. U.S.C. § 1681, et seq., (FCRA) and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2. Plaintiff is a citizen of the State of New York who resides within this District.

3. Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that the alleged debt that Defendant sought to collect from Plaintiff is a consumer debt.

4. Upon information and belief, Defendant's principal place of business is located in Carrollton, Texas.

5. Defendant is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

6. Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

7. Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

## *Jurisdiction and Venue*

8. This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## *Allegations Particular to Chava Schechter*

10. Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect alleged consumer debts from the Plaintiff.

11. Plaintiff is a consumer who is the victim of identity theft and has suffered particularized and concrete harm.

12. When Plaintiff learned of a fraudulent Comcast account that was appearing on her credit reports from the consumer reporting agencies ("CRAs"), Plaintiff began contesting the fraud account.

13. Plaintiff's disputed the said account directly with Experian, Equifax and Trans Union on or about February 3, 2020 and March 15, 2020.

14. Plaintiff advised the CRAs that its credit reporting as to this account was inaccurate as the Plaintiff's ex-husband had obtained the Plaintiff's personal information and opened the said account in her name.

15. It is believed and therefore averred that the CRAs notified Southwest Credit of the Plaintiff's disputes.

16. Plaintiff also had notified Southwest Credit directly of the fraud.

17. Nevertheless, Southwest Credit failed to investigate the information properly and failed to report the accounts to the CRAs as fraudulent.  See Whitesides v. Equifax Credit Info. Servs., 125 F. Supp. 2d 807 (W.D. La. 2000). (allowing defamation, negligence, and FCRA claims to go forward against card issuer that continued to report negative information and failed to delete misinformation after being informed of identity theft)

18. Southwest Credit further failed to investigate the information properly and continued to send bills to the perpetrator's address with accrued finance and late charges on the fraudulent accounts.

19. Defendant has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow its requirements as set forth under the FCRA and state law, which has resulted in the erroneous information on Plaintiff's credit report.

20. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See Johnson v. MBNA America Bank, No. 03123S (February 11, 2004).

21. The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). (To achieve this goal, it

"imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute."), Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1162 (9th Cir. 2009). (These duties are triggered whenever a credit reporting agency notifies the furnisher that a consumer has disputed information that it provided to the agency. Id.; 15 U.S.C. § 1681s-2(b) (1). Once this occurs, the furnisher must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency" about the dispute and correct any inaccuracies. *Id*.), see also Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059 (9th Cir. 2002). (Describing furnisher's duties under the FCRA). If the furnisher fails to carry out any of these duties, the consumer who initiated the dispute may sue the furnisher. 15 U.S.C. § 1681o; *Nelson*, 282 F.3d at 1059. See also Haynes v. Chase Bank U.S.A., N.A., Docket No. 7:18-cv-03307 (S.D.N.Y. Apr 16, 2018). ([The Judge] conclude[s], therefore, based on the foregoing allegations in the complaint that the complaint, if true -- and I need to accept it as true -- states a cause of action against Chase for breach of the discharge under Sections 727 and 524(a)(2) of the Bankruptcy Code for intentionally assisting in the collection of discharged debt by not correcting the debtors' credit reports to reflect that the debt has, in fact, been discharged.), Venugopal v. Citibank, National Association, Docket No. 5:12-cv-02452 (N.D. Cal. May 14, 2012). (Construed in the light most favorable to Plaintiff, this report supports Plaintiff's claim that Citibank continued to misreport Plaintiff's debt history even after Plaintiff initiated his dispute with Experian. Accordingly, he has stated a valid claim under the FCRA.)

22. It is only after receiving the CRA's notice of the consumer's dispute that a furnisher can be liable to the consumer for its failure to participate in the investigation process as

required by the statute. A failure of the CRA to forward the dispute to the furnisher relieves the furnisher of its obligation to investigate.

23. However, the furnisher that establishes this defense necessarily establishes the consumer's alternative claim that the CRA breached its statutory duty to notify the furnisher.[1]

24. These litigation alternatives illustrate that whether the CRA or the furnisher (or both) is ultimately responsible for the failure to properly investigate the consumer's dispute is virtually impossible to know prior to formal discovery. Accordingly, the consumer is well advised to join claims against both the furnisher and the CRA when suing either for breaching its investigation duties. This proposition has been expressly endorsed by at least one federal court.

25. Any furnisher who negligently fails to comply with any of its investigation duties is liable to the consumer for actual damages, the costs of litigation, and attorney fees. If the violation is willful, the furnisher is liable for actual damages or minimum statutory damages between $100 and $1000, for punitive damages, as well as for costs and attorney fees.

26. As in all FCRA cases, a necessary element of establishing furnisher liability is proof of damages—actual, statutory, or punitive. Thus, the consumer must either establish a willful violation permitting an award of statutory and punitive damages or have suffered damages in connection with a negligent violation. The FCRA is not a strict liability statute, so

---

[1] Snyder v. Nationstar Mortg. L.L.C., 2015 WL 7075622 (N.D. Cal. Nov. 13, 2015) (allegation of an inaccurate tradeline that the furnisher failed to correct or delete as part of the investigation process necessarily states a claim for a violation of that duty under § 1681s-2(b)(1)(E)); Abdelfattah v. Carrington Mortg. Serv. L.L.C., 2013 WL 495358 (N.D. Ca. Feb. 7, 2013) (complaint stated a claim for relief because it alleged a objectively false debt balance that failed to account for foreclosure sale proceeds, and thus showed that the furnisher "did not correct the report after notice and time to investigate)

merely showing that the furnisher did not comply with one of its duties will not establish liability.

27. If Defendant had performed a reasonable investigation into the Plaintiff's disputes, the said collection account appearing on Plaintiff's credit report would have been removed.

28. Inaccurate information was included in the Plaintiff's credit report.

29. Defendant willfully and/or negligently violated the FDCPA.

30. The inaccuracy was due to the all Defendant's failure to follow reasonable procedures to assure maximum possible accuracy.[2]

31. On or about February 3, 2020, the Plaintiff pulled her credit report with Experian whereupon she discovered the said Comcast account being reported by the Defendant.

32. Under the "payment status" column, the Defendant stated in part: "Seriously past due date / assigned to attorney[.]" (see attached exhibit)

33. Defendant misrepresented the legal status of the alleged debts by furnishing the CRAs with a statement, that the account had been "assigned to attorney."

34. Such language is a misrepresentation that an attorney is involved in the collection of the Plaintiff's accounts in violation of 15 U.S.C. § 1692e(3), and a false threat of legal action in violation of 15 U.S.C. § 1692e(5).

---

[2] Saindon v. Equifax Info. Serv., 608 F. Supp. 2d 1212, 1217 (N.D. Cal. 2009) ("In its motion and declarations, [Equifax] does lay out a string of application procedures that include both automated and manual checks by the agency. But giving all reasonable inferences to the plaintiff, the monitoring and reinvestigation procedures could be seen as quite limited. The procedures could be seen by a jury as merely basic automated checks that catch missing data fields on submitted forms, which do not go to the heart of whether a source of information is trustworthy. For example, when a consumer files a complaint contesting the accuracy of an item on his or her credit report, the sole action taken by Equifax is to contact the source of the information to verify if it is accurate. If the source says that it is, the inquiry ends . . . This does virtually nothing to determine the actual credibility of the source—which is what plaintiff asserts is lacking—or so a jury could reasonably conclude. While defendant does have some procedures that include a manual review of some disputes, a jury could reasonably find that almost none of the procedures include a review of the integrity of the information source itself. "), Sharf v. TransUnion, L.L.C., 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015) (student loan servicer willfully violated FCRA by failing to conduct any investigation, deferring entirely to lender to determine accuracy), Saenz v. Trans Union, L.L.C., 2007 WL 2401745, at *7 (D. Or. Aug. 15, 2007) (when CRA is on notice that information is suspect, "it is not reasonable for the [CRA] simply to verify the creditor's position without additional investigation") White v. Trans Union, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) (rejecting argument that confirmation of the accuracy of information from its original source is a reasonable inquiry as a matter of law)

35. The vagueness of the said language adds to the misrepresentation.

36. Moreover, the said language is misleading in a material way as the reference may have been "assigned to an attorney" instills angst in the unsophisticated debtor.

37. As this account was not assigned to an attorney, the mention of attorney representation was knowingly false.

38. Section 1692e(3) forbids "The false representation or implication that any individual is an attorney or that any communication is from an attorney."

39. Section 1692e(5) forbids "The threat to take any action that cannot legally be taken or that is not intended to be taken."

40. Defendant violated 15 U.S.C. §§ 1692e(2)(A), 1692e(3), 1692e(5), 1692e(8), 1692e(10) and 1692f(1) of the FDCPA for the false representation of the character, amount, or legal status of the debts, and for collecting on a debt which was not expressly authorized by the agreement creating the debt or permitted by law.

41. Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

42. Plaintiff suffered actual harm by being the target of the Defendant's misleading debt collection communications.

43. Defendant violated the Plaintiff's right not to be the target of misleading debt collection communications.

44. Defendant violated the Plaintiff's right to a truthful and fair debt collection process.

45. Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

46. Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendant's collection efforts.

47. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendant's false representations misled the Plaintiff in a manner that deprived her of her right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

48. These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

49. As an actual and proximate result of the acts and omissions of the Defendant, Plaintiff has suffered including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment for which she should be compensated in an amount to be established by a jury at trial.

## AS AND FOR A FIRST CAUSE OF ACTION

*Violations of the Fair Credit Reporting Act by Credit Information Furnisher, (15 U.S.C. 1681)*
**Defendant's failure to notify CRA's of the fraudulent account**

50. At all times mentioned in this Complaint, Defendant was a Furnisher of information as referred to in 15 U.S.C. § 1681s-2 of the FCRA. Defendant has negligently and/or willfully violated various provisions of the Fair Credit Reporting Act and other federal and state laws and are thereby liable unto Plaintiff.

51. Plaintiff was a victim of repeated fraudulent activity.

52. Plaintiff is informed and believes and thereon alleges that at least one if not all of the

credit reporting agencies gave notice of the disputes to the furnisher Defendant Southwest Credit as required under the FCRA.

53. Plaintiff is further informed and believes and thereon alleges that at least one if not all of the credit reporting agencies gave notice of the disputes to furnisher Defendant as required under the FCRA in that the furnisher Defendant acted on the notice and at least partially changed the report information it furnished.

54. Each of the CRAs reported to Plaintiff that they respectively had given notice of the disputes to the information furnisher.

55. The furnisher Defendant had notice of the disputes by virtue of its own respective investigations seeking information from the credit report file after the credit reporting agencies has already put a fraud alert warning in the file.

56. Plaintiff herself, gave notice of the disputes directly to Defendant.

57. Defendant failed to conduct an investigation with respect to the disputed information.

58. Defendant failed to review relevant information provided by the CRAs.

59. Had Defendant conducted a reasonable investigation, Defendant would have discovered that Plaintiff fell victim to identify theft, and promptly modified those items of information, deleted those items of information or permanently blocked the reporting of that item of information.

60. Defendant failed to promptly delete that item of information; or permanently block the reporting of those items of information.

61. Defendant furnished information that purports to relate to Plaintiff to the CRAs after Plaintiff submitted an identity theft report stating that information maintained by the Defendant that purports to relate to Plaintiff resulted from identity theft.

62. Defendant received re-transmitted disputes from the various consumer reporting agencies, who had received Plaintiff's disputes, and the agencies sent the disputes to the Defendant. Nevertheless, Defendant failed in its duties to conduct a reasonable reinvestigation into the disputes and subsequently demanded that the false information be retained in Plaintiff's credit records and files held and re-reported by the various agencies.

63. Defendant was aware or reasonably should have been aware that its reportings and activities would damage Plaintiff and her ability to enjoy life and utilize the credit rating and reputation property rights he secured by honoring her obligations to creditors.

64. Defendant recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning the Plaintiff with reckless disregard for the truth.

65. Defendant's publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused humiliation, emotional distress, mental anguish and physical injury.

66. In doing the acts alleged herein, Defendant willfully, intentionally and/or recklessly failed to comply with the requirements of FCRA, including but not limited to the requirements within 15 U.S.C. § 1681n.

67. As a further proximate result of the acts alleged herein of Defendant, as alleged above, Plaintiff has been harmed in that Plaintiff has incurred attorney's fees and costs necessary to pursue correction of his credit record and protection from further injury and to pursue this claim, and therefore Plaintiff is entitled to his reasonable attorney's fees and costs incurred in prosecution of this claim as allowed pursuant to 15 U.S.C. §§ 1681o(a) and 1681n(a) or otherwise allowed before this court.

68. The acts alleged herein of Defendant were willful and malicious and were done with fraud

or oppression, and in reckless disregard of Plaintiff's rights and were intended to or was known likely to oppress and cause injury to Plaintiff and was done within the course and scope of the Defendant's employees' employment and/or managerial authority or pursuant to company policy. Plaintiff is therefore entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of himself and the members of a class, as against the Defendant.*

69. At all times mentioned in this Complaint, Defendant was a Furnisher of information as referred to in 15 U.S.C. § 1681s-2 of the FCRA.

70. This cause of action is brought on behalf of Plaintiff and the members of two classes.

71. Class A consists of all persons whom Defendant's records reflect resided in the State of New York who observed an account that appeared on their credit report(s); (a) Defendant had received notice from the CRAs that Plaintiff disputed the inaccurate account balance information; (b) After receiving notice of Plaintiff's disputes from the CRAs, Defendant willfully and/or negligently failed to mark the respective accounts as disputed on Plaintiff's reports and (c) Defendant continued to communicate the inaccurate information to the CRAs.

72. Class B consists of all persons whom Defendant's records reflect resided in the State of New York who observed an account that appeared on their credit report(s); (a) wherein the Defendant had furnishing the national credit bureaus with a statement, that the account had been assigned to an attorney; and (b) the Defendant violated 15 U.S.C. §§ 1692e(2)(A), 1692e(3), 1692e(5), 1692e(8), and 1692e(10) of the FDCPA for the false representation of the character, amount, or legal status of the debt.

73. Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

    A. The class is so numerous that joinder of all members is impracticable, though the precise number of class members may be known only to the Defendant. Plaintiff estimates that each class has thousands of members

    B. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendant violated the FDCPA.

    C. The only individual issue is the identification of the consumers who detected such information on their credit reports, furnished by the Defendant to the credit bureaus (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendant.

    D. The claims of the Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

    E. The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

74. A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

      Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

75. If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

76. Collection attempts, such as those made by the Defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

### *Violations of the Fair Debt Collection Practices Act*

77. The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

78. Because the Defendant violated the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendant and award damages as follows:

      A. Statutory and actual damages provided under the FDCPA, 15 U.S.C. § 1692(k);

      B. Attorney fees, litigation expenses and costs incurred in bringing this action; and

      C. Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
October 14, 2020

_/s/ Adam J. Fishbein_
Adam J. Fishbein, P.C. (AF-9508)
Attorney at Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.

_/s/ Adam J. Fishbein_
Adam J. Fishbein (AF-9508)